# Application of Emoluments Clause to Part-Time Consultant for the Nuclear Regulatory Commission

A part-time consultant for the Nuclear Regulatory Commission occupied a position of profit or trust under the United States such that he could not, consistent with the Emoluments Clause of the Constitution, accept employment with a private domestic corporation to perform work on a contract with a foreign government.

June 3, 1986

MEMORANDUM OPINION FOR THE GENERAL COUNSEL,
NUCLEAR REGULATORY COMMISSION

This responds to your request that this Office provide a written opinion giving the legal basis for our prior oral advice that Mr. A, a part-time staff consultant to the Nuclear Regulatory Commission (NRC), may not accept employment with a private domestic corporation to perform work on a contract with the government of Taiwan, consistent with the Emoluments Clause of the Constitution.[1]

At the time that you originally requested our advice on this matter, you informed us that the Taiwanese government must approve Mr. A's participation on this contract and that Mr. A would be paid by the corporation out of funds it receives from the contract. As you recognized, under prior opinions of this Office such an employment arrangement would appear to be proscribed, unless Mr. A does not hold an "office of profit or trust" within the meaning of the Emoluments Clause.[2] See "Application of the Emoluments Clause of the Constitution and the Foreign Gifts and Decorations Act," 6 Op. O.L.C. 156 (1982).

---

[1] The Emoluments Clause provides:

> No Title of Nobility shall be granted by the United States: And no Person holding any Office of Profit or Trust under them, shall, without the consent of the Congress, accept of any present, Emolument, Office or Title, of any kind whatever, from any King, Prince, or foreign State.

U.S. Const. art. I, § 9, cl. 8.

[2] It is well established that compensation for services performed for a foreign government constitutes an "emolument" for purposes of Article I, § 9, cl 8. See 40 Op. Att'y Gen. 513 (1947); 44 Comp Gen. 130 (1964).

In March 1985, we advised your office orally that this was a difficult question of constitutional analysis and that we would be unable to respond fully in writing in time for Mr. A to make a decision with regard to the proposed employment. We also indicated our preliminary conclusion that Mr. A did hold an "office of profit or trust" within the meaning of the Emoluments Clause, even though he worked for the NRC on a part-time basis only. We therefore suggested that he decline the Taiwanese government's offer of employment.

Based upon our recent thorough review of the history and purpose of this constitutional provision, we conclude that, in light of the nature of Mr. A's employment with the United States government, Mr. A holds an "office of profit or trust" within the meaning of that provision and that, therefore, he could not have accepted the proposed employment without the consent of Congress.[3]

## I. History and Purpose of the Emoluments Clause

The Emoluments Clause, adopted unanimously at the Constitutional convention of 1787, was intended by the Framers to preserve the independence of foreign ministers and other officers of the United States from corruption and foreign influence. 3 Farrand, *The Records of the Federal Convention of 1787* 327; *see also* 2 Farrand, *supra*, at 389. As Governor Randolph explained during the ratification debate in the Virginia convention:

> [This] restriction restrains any persons in office from accepting of any present or emolument, title or office, from any foreign prince or state. This restriction is provided to prevent corruption. All men have a natural inherent right of receiving emoluments from any one, unless they be restrained by the regulations of the community. An accident which actually happened, operated in producing the restriction. A box was presented to our ambassador by the king of our allies.[4] It was thought proper, in order to exclude corruption and foreign influence, to prohibit any one in office from receiving or holding emoluments from foreign states. I believe, that if at that moment, when we were in harmony with the King of France, we had supposed he was corrupting our ambassador, it might have disturbed that confi-

---

[3] This opinion addresses only the constitutional issue under Article I, § 9, cl. 8. It does not purport to deal with any other statutory or regulatory restrictions that Mr. A's proposed employment may have implicated. We note, however, that you have expressed the view that the proposed employment would not have contravened NRC's conflict of interest regulations.

[4] "Dr. [Benjamin] Franklin is the person alluded to by Randolph. In the winter of 1756, in Philadelphia, under the roof of a venerable granddaughter of Dr. Franklin, I saw the beautiful portrait of Louis XVI, snuff-box size, presented by that king to the doctor. As the portrait is exactly such as is contained in the snuff-boxes presented by crowned heads, one of which I have seen, it is probable that this portrait of Louis was originally attached to the box in question, which has in the lapse of years been lost or given away by Dr. Franklin " H.B. Grigsby, *History of the Virginia Federal Convention of 1788* (Virginia Historical Society Collections, Vols. 9–10) 264.

dence, and diminished that mutual friendship, which contrib-
uted to carry us through the war.

3 Farrand, *supra*, at 327. Although no court has yet construed the Emoluments
Clause, its expansive language and underlying purpose, as explained by Gover-
nor Randolph, strongly suggest that it be given broad scope. Consistent with a
broad interpretation, past Attorneys General have stated that the Clause is
"directed against every kind of influence by foreign governments upon officers
of the United States," 24 Op. Att'y Gen. 116, 117 (1902), in the absence of
consent by Congress. 40 Op. Att'y Gen. 513 (1947). *See* 5 U.S.C. § 7342.

Prior opinions of this Office have assumed without discussion that the
persons covered by the Emoluments Clause were "officers of the United
States" in the sense used in the Appointments Clause, U.S. Const. art. II, § 2,
cl. 2.[5] Nevertheless, in 1982, we did advise that a person may hold an "office of
profit or trust" under the Emoluments Clause without necessarily being an
"officer of the United States" for purposes of the Appointments Clause. At that
time, we explained that the language and the purposes of the two provisions are
significantly different. The Appointments Clause, which is rooted in separation
of powers principles, had been construed to require that "any appointee exer-
cising significant authority pursuant to the laws of the United States" is an
"officer of the United States" who must be appointed in the manner prescribed
by Article II. *Buckley* v. *Valeo*, 424 U.S. 1, 124–37 (1976). Employees are
"lesser functionaries" subordinate to officers. *Id.* By contrast, the Emoluments
Clause is a prophylactic provision, and hence, was intended to apply not merely
to those appointees exercising "significant authority" but to "lesser functionar-
ies" as well. Thus, although the possibility of corruption and foreign influence
of foreign ministers apparently was of particular concern to the Framers, they
expressly chose not to limit the prohibition on accepting emoluments from
foreign governments to foreign ministers. They recognized that such a prohibi-
tion was also necessary for other officials and, accordingly, drafted the Clause
to require undivided loyalty from *all* persons holding offices of profit or trust
under the United States.[6]

We believe that the relevant inquiry, therefore, is not whether Mr. A should
be considered an "officer of the United States" in the Appointments Clause
sense. Rather, under the Emoluments Clause, the inquiry is whether Mr. A's
part-time position at the NRC could be characterized as one of profit or trust
under the United States — a position requiring undivided loyalty to the United
States government.

---

[5] In prior memoranda, it was unnecessary for this Office directly to address the issue whether the
Emoluments Clause applies to employees or "lesser functionaries," as well as officers.

[6] We also indicated in 1982, as support for this proposition, that in enacting the Foreign Gifts and
Decorations Act of 1966, 5 U.S.C. § 7342, Congress assumed without discussion that the Emoluments Clause
requires congressional consent before any government employee may accept a gift from a foreign govern-
ment. *See* 6 Op. O.L.C. at 158. *See also* S. Rep. No. 1160, 89th Cong., 2d Sess. (1966); H.R. Rep. No. 2052,
89th Cong., 2d Sess. (1966). The Foreign Gifts and Decorations Act was extended in 1977 to apply to experts
an consultants hired by the government under 5 U.S.C. § 3109. *See* 5 U.S.C. § 7342(a); S. Rep. No. 294, 95th
Cong., 1st Sess. (1977).

## II. Mr. A's Position

Although this Office expressed the view in 1982 that the Emoluments Clause applies to all government employees, *see* 6 Op. O.L.C. at 158, the clause need not be read so broadly to resolve the matter at hand. The information that you have provided concerning the nature of Mr. A's employment strongly suggests that Mr. A holds a position of trust within the meaning of the Emoluments Clause.

We understand that the NRC selected Mr. A on the basis of his personal qualifications and his particular expertise.[7] The NRC considered the renewal of Mr. A's appointment "essential to the conduct of the agency's mission." His assignments may involve high priority, quick turn-around issues, and the NRC furnishes him with various materials and documentation. Mr. A's position requires a security clearance, *see* 42 U.S.C. § 2165, and he is required to and has taken an oath of office. You have supplied us with a copy of the NRC's "Employment Conditions for Consultants and Advisers," which provides that Mr. A must conform to NRC policy and regulations regarding employee conduct, conflict of interest, non-disclosure of confidential information, and political activity. Mr. A is also required to report to the NRC any change in his private employment or financial interests. Finally, you note that he is "on call to serve the agency." All of these factors together indicate that Mr. A is highly valued for his abilities and that, in the course of his employment, he may develop or have access to sensitive and important, perhaps classified, information. Even without knowing more specifically the duties of his employment, these factors are a sufficient indication that the United States government has placed great trust in Mr. A and requires and expects his undivided loyalty. Therefore, we believe the Emoluments Clause applies to him.

Finally, we recognize that for purposes of the federal conflict-of-interest laws only, Mr. A is classified as a "special government employee." *See* 18 U.S.C. § 202. This classification, without more, however, does not exempt Mr. A from the constitutional prohibition in the Emoluments Clause. The legislative history of the conflict-of-interest laws reveals that Congress intended to create a category of special government employees for whom the restraints upon regular government employees would be relaxed. This category would permit the government to employ part-time or intermittent consultants with less difficulty. *See* H.R. Rep. No. 748, 87th Cong., 1st Sess. 4–5 (1961); S. Rep. No. 2213, 87th Cong., 2d Sess. 16 (1962) (individual views of Sen. Carroll). Nonetheless, special government employees are covered by broad prophylactic statutes which, like the Emoluments Clause, are aimed at preventing corruption and extra-government influence. For example, special government employees are included within the coverage of 18 U.S.C. § 207 (governing post-employ-

---

[7] *See* 15 Op. Att'y Gen. 187, 188 (1877) (Commissioners appointed by the President for the Centennial Exhibition hold offices of "trust" within the meaning of the Emoluments Clause, even though their duties are of a special and temporary character, because they have been entrusted with those duties "on account of their personal qualifications and fitness for the place.").

ment activities) and 18 U.S.C. § 208 (governing acts affecting a personal financial interest), as well as 18 U.S.C. §§ 203 and 205 in certain cases. The conflict-of-interest laws do not address whether a special government employee may accept simultaneous employment with a foreign government. We do not read 18 U.S.C. § 202 as an implied expression of congressional consent under the Emoluments Clause to such employment, particularly when, pursuant to that Clause, Congress has expressly consented to the acceptance of gifts of minimal value from foreign governments by all employees, including experts and consultants. *See* 5 U.S.C. § 7342.

In our view, the policy behind the Emoluments Clause, requiring the undivided loyalty of individuals occupying positions of trust under our government, has as much force with respect to part-time employees as it does with respect to full-time employees. Although we do not doubt that Mr. A is worthy of the trust placed in him by the NRC, we believe that his proposed employment with a domestic corporation on a contact with a foreign government is within the proscription of the Emoluments Clause.

## Conclusion

For the foregoing reasons, we conclude that the Emoluments Clause of the Constitution prohibits Mr. A from accepting employment under a contract with a foreign government, absent express congressional consent.

CHARLES J. COOPER
*Assistant Attorney General*
*Office of Legal Counsel*
